UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROBERT H. LUKE,

                  Plaintiff,

    v.

CITY OF TACOMA, et al.,

                Defendants.

CASE NO. C18-5245 BHS

ORDER GRANTING IN PART, DENYING IN PART, AND DEFERING RULING IN PART ON DEFENDANTS' MOTION TO DISMISS

      This matter comes before the Court on the motion to dismiss of Defendants Sean Gustafson, Frank Krause, Mike Ake, Donald Ramsdell, the Tacoma Police Department, and the City of Tacoma (collectively "Defendants"). Dkt. 8. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion in part, denies it in part, and defers ruling in part. The Court also requests supplemental briefing from the parties and establishes a deadline for any motion to file a second amended complaint in light of this order.

## I.  PROCEDURAL HISTORY

      On March 8, 2018, Plaintiff Robert H. Luke ("Plaintiff") filed his original complaint in this action in Pierce County Superior Court. Dkt. 1-2. On March 28, 2018, Defendants removed the case to federal court. Dkt 1.

On April 4, 2018, Defendants moved for partial dismissal of Plaintiff's claims. Dkt. 8. On April 23, 2018, Plaintiff filed an amended complaint as a matter of course and responded to Defendants' motion to dismiss. Dkts. 13, 14. On April 27, 2018, Defendants replied. Dkt. 15.

## II.  FACTUAL BACKGROUND

Plaintiff worked as a patrolman with the Tacoma Police Department from November 1995 until October 2015, when he retired at the age of fifty-five. Dkt. 13 at 3. During his time as a police officer, Plaintiff occasionally accepted qualified "off-duty work" assignments that were assigned to him through his command officer, Defendant Krause. *Id.* at 4. Plaintiff also made direct arrangements with businesses and private persons for qualified "off-duty work." *Id.* at 4–5. Plaintiff alleges that both methods of obtaining off-duty work were approved by the Tacoma Police Department. *Id.* at 4. As part of Plaintiff's employment with the Tacoma Police Department, Plaintiff was issued a police vehicle that he was permitted to use for on-duty and off-duty Tacoma Police Department work. *Id.* at 5.

In 2009, Defendant Gustafson, a captain, informed Plaintiff that Gustafson had been tasked with getting rid of Plaintiff and his long-time partner. *Id.* at 3–4.

In 2010, Plaintiff began a part-time relief security officer position with the Port of Tacoma. *Id.* at 5. The position was not a qualified "off-duty work" position, but rather an entirely separate job. *Id.*

In 2012, Defendant Krause expressed to Plaintiff and others in the department that he resented Plaintiff making arrangements for off-duty work directly with the public rather than through himself as Plaintiff's command officer. Dkt. 13 at 5.

In August 2013, Plaintiff was performing qualified off-duty work at a motel which ended at approximately 2:00 am. *Id.* at 6. After driving home, Plaintiff received a call from the Port of Tacoma requesting immediate assistance in the capacity of his second job as a Port of Tacoma relief officer due to a protest. *Id.* at 6. Plaintiff only had his unmarked Tacoma Police Department vehicle available to him when he received the call, so he used that vehicle to respond to his non-Tacoma Police Department position. *Id.* at 6. After arriving at the scene, Plaintiff found that Defendant Krause was also at the Port because both Tacoma Police Department officers and Port employees were responding to the protest. *Id.* at 6. Defendant Krause observed that Plaintiff was using his assigned Tacoma Police Department vehicle. *Id.* Krause confirmed that it was a Tacoma Police Department vehicle and then ordered Plaintiff to explain why it was being used to travel to his separate employment at the Port. *Id.* at 6–7. Before Plaintiff could explain, Defendant Krause abruptly drove off. *Id.* at 7. Defendant Krause later filed a complaint against Plaintiff with internal affairs. *Id.* Internal affairs brought disciplinary charges for untruthfulness, insubordination, behavior unbecoming an officer, and improper use of a department vehicle. *Id.* After a hearing eight months later, a violation finding was rendered. Plaintiff grieved that result and hearing on his grievance is still pending. *Id.*

In March 2014, Plaintiff's son received a traffic ticket in the city of Lakewood. *Id.* Plaintiff received permission from his lieutenant to travel to the city of Lakewood while

on duty to pay the ticket. *Id.* Subsequently, a Lakewood Police Department filed a complaint with the Tacoma Police Department. *Id.* at 8. Purportedly, the complaint falsely claimed that Plaintiff made statements while paying his son's ticket suggesting that he would retaliate against Lakewood police officers in his jurisdiction. *Id.* at 8. Despite having received permission from his lieutenant to go and pay the ticket while on duty, Defendant Ake initiated a disciplinary citation against Plaintiff for conduct unbecoming an officer and leaving his duty post. *Id.* Although Plaintiff's lieutenant informed Defendant Ake that the complaint against Plaintiff "was without substantive merit," Defendant Ake nonetheless referred the matter to internal affairs. *Id.* While it is unclear from Plaintiff's complaint if this discipline is subject to a separate grievance or the grievance already mentioned above, grievance proceedings for this discipline are still pending. *Id.*

At some unspecified time in the autumn of 2015, Plaintiff was hired for a full-time position by the Port of Tacoma. *Id.* The position included unspecified union protections, but could not be held by someone who was charged or had been convicted of a felony. *Id.* at 8–9. On September 1, 2015, Plaintiff began to work a graveyard shift at the Port before starting his day shift at the Tacoma Police Department. *Id.* at 9. His shift with the Port ended at 6:53 am and his shift with the Tacoma Police Department began at 7:00 am. Plaintiff's direct supervisor at the Tacoma Police Department informed him that his Port of Tacoma position was permissible so long as it did not interfere with his Tacoma Police Department work. Plaintiff's supervisor also stated that Plaintiff could adjust his shift to accommodate "necessary deviations from any rigid preliminary schedule." *Id.*

Plaintiff alleges that deviation from the preliminary posted schedule was the policy and practice of officers in his position with the Tacoma Police Department. *Id.* Plaintiff explains that the Department utilizes a "Telestaff staffing grid" that is a projection of future coverage and allows for numerous adjustments by officers in every pay period. *Id.* at 12. Plaintiff further alleges that the system did not require command authority for any supervisor to deny reasonable schedule adjustments on either a prior or post conduct basis. *Id.* Plaintiff made adjustments to his Tacoma Police Department shift to accommodate his schedule at the Port of Tacoma, which was not flexible. *See id.* at 9–11. Each shift adjustment that Plaintiff made was authorized by an immediate supervisor. *Id.* at 13.

Also at an unspecified date in autumn of 2015, Plaintiff informed his direct supervisor that he was considering retiring in November 2015 "in order to round-out his full 32nd year of police work." *Id.* at 10. Soon after that, "various command personnel" announced that they were unhappy with Plaintiff working double shifts. "[A]s a consequence of these statements and remarks, [Plaintiff] immediately gave his notice of retirement on October 1, 2015. *Id.* After his retirement from the Tacoma Police Department, Plaintiff continued to work in his position for the Port of Tacoma. *Id.*

After Plaintiff retired, Tacoma Police Department command personnel assigned Detective Sergeant Schieferdecker to investigate whether Plaintiff had been stealing time from the Tacoma Police Department by claiming to be on duty when he was in fact still working at the Port. *Id.* Detective Schieferdecker was assigned to the investigation even though she allegedly had made previous false allegations against Plaintiff for which she

was verbally reprimanded. *Id.* at 11. Before the investigation began, Defendant Ake contacted Plaintiff's supervisor at the Port of Tacoma. *Id.* at 11. Defendant Ake informed the Port supervisor that there was a state regulation prohibiting Plaintiff from working for the Tacoma Police Department and the Port of Tacoma at the same time, that it had been against Tacoma Police Department Policy, and that there was an investigation being started to determine if Plaintiff had committed a felony. *Id.* Detective Schieferdecker went to the Port during her investigation and obtained Plaintiff's timecard records. *Id.* She also informed the supervisors at the Port that she was investigating Plaintiff for a crime and that felony charges would be forthcoming. *Id.* at 12.

Plaintiff alleges that the investigation and previous statements of displeasure with Plaintiff's off-duty work were done discriminatorily on the basis of Plaintiff's age. *Id.* at 17. Plaintiff alleges that Defendant Krause "manufactured discipline" against Plaintiff based in part on Plaintiff's age and Krause's personal animosity towards Plaintiff. *Id.* Plaintiff also alleges that the discipline he was subjected to was motivated by his age and constituted a hostile work environment. Plaintiff further complains that Defendant Ake "made false statements to third persons and entity representatives not employed by the City of Tacoma . . . which would place [Plaintiff] in a false light." *Id.* at 18.

"On the basis of Detective Shieferdecker's investigative report and at the direction of the individual defendants herein, [P]laintiff . . . was charged with theft in the second degree under RCW 9A.56.040." *Id.* at 13. Documents attached to Plaintiff's amended complaint show that the charges were filed by the Pierce County Prosecuting Attorney's Office. *See id.* at 30–32. Plaintiff alleges that other Tacoma Police Department officers

who had been investigated and had been proven to have "stolen time" were not charged with a crime. *Id.* at 14. He claims that under the command of Defendant Tacoma Police Department Chief Ramsdell, the use of disciplinary action "has been selective, inconsistent and frequently targeted against officers with whom certain command personnel have animus based on age, race and physical/emotional/mental disability." *Id.* at 18. He claims that there exists a "de facto policy of use of disciplinary procedure for punitive and political purposes, at times personal vendettas, against disfavored officers . . . having everything to do by certain officers' relationship with certain command personnel." *Id.*

Plaintiff voluntarily presented himself at the courthouse where he was "fingerprinted, photographed and processed" by law enforcement before presenting to a judge for arraignment. Dkt. 13 at 13–14. Plaintiff was then released on his own recognizance with undefined "conditions that affected his freedom of movement, residence and association." *Id.* at 14. Plaintiff does not indicate whether he was required to post bond or was subject to reporting requirements other than the responsibility to appear at hearings.

In addition to public humiliation and loss of reputation, Plaintiff lost his employment at the Port because of the felony charges that were pending against him. *Id.* at 11, 14–15. Plaintiff also lost a subsequent job he was initially hired for at Fred Meyer because of the pending felony charges. *Id.* at 14–15. Additionally, Plaintiff incurred the cost of hiring a criminal defense attorney. *Id.* at 14.

On October 18, 2016, the Pierce County Prosecuting Attorney's Office voluntarily dismissed the charges against Plaintiff without prejudice. *Id.* at 15, 30–32. After the dismissal of charges, Plaintiff was rehired by the Port of Tacoma where he presently continues to work. *Id.* at 16.

## III. DISCUSSION

Defendants move for partial dismissal of Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 8. Motions to dismiss brought under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1301 (9th Cir. 1983). To survive a motion to dismiss, the complaint does not require detailed factual allegations but must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1965 (2007). Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

Specifically, defendants move for dismissal of the following claims: (1) Plaintiff's claims against the Tacoma Police Department; (2) Plaintiff's § 1983 claims for unreasonable seizure and violations of procedural due process; substantive due process claims, and equal protection; and (3) Plaintiff's state law claim for tortious interference with a contract. The Court addresses each of these claims below.

**A.      Claims Against the Tacoma Police Department**

Plaintiff has abandoned claims against the Tacoma Police Department in his amended complaint. Indeed, the proper party is the City of Tacoma. *See Henry v. Atoch*, C11-5740RJB, 2012 WL 1021979, at *8 (W.D. Wash. Mar. 26, 2012). In light of the amended complaint, the motion to dismiss the Tacoma Police Department is moot.

**B.      42 U.S.C. § 1983 claims**

Plaintiff has brought claims against the various defendants alleging a panoply of constitutional violations pursuant to 42 U.S.C. § 1983. "Section 1983 is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005) (quotation omitted). Accordingly, to be actionable under 42 U.S.C. § 1983, "the conduct complained of must have deprived the plaintiff of some right, privilege or immunity protected by the Constitution or laws of the United States." *Id.*

Plaintiff's 42 U.S.C. § 1983 claims are predicated on theories that Defendants' conduct violated Plaintiff's rights against unreasonable seizures, to procedural and substantive due process, and to equal protection of law. Defendants move to dismiss all of these claims.

**1.      Fourth Amendment Seizure**

Plaintiff claims that Defendants violated his Fourth Amendment rights by causing criminal charges to be brought against him, which resulted in a seizure of his person without probable cause. Specifically, Plaintiff argues that he was seized when he was required to appear for his arraignment and was subsequently subjected to pretrial release

conditions. Defendants move to dismiss on the basis that Plaintiff has failed to allege facts demonstrating that he was "seized" within the meaning of the Fourth Amendment. They point to the fact that Plaintiff was never taken into custody, that he reported voluntarily for his arraignment, and that he was released on his own recognizance while charges were pending.

A portion of the parties' dispute revolves around whether the imposition of pretrial release conditions constitutes a seizure for the purposes of the Fourth Amendment. While the subject remains unclear, the Ninth Circuit has noted that the imposition of release conditions after arraignment on felony charges *might* constitute a seizure governed by the reasonableness requirement of the Fourth Amendment. *See Yousefian v. City of Glendale*, 779 F.3d 1010, 1015 (9th Cir. 2015). However, the Ninth Circuit has left the question open, stating:

> Our case law does not make clear whether California's [own-recognizance] release conditions, as applied to a defendant facing felony charges, constitute a Fourth Amendment seizure. In *Karam v. City of Burbank*, 352 F.3d 1188, 1193–94 (9th Cir. 2003), we held that the same conditions, as applied to a defendant facing only misdemeanor charges, did not, but left open the question as it applies to a defendant facing felony charges. We need not, and do not, resolve that question here.

*Yousefian v. City of Glendale*, 779 F.3d 1010, 1016 n.6 (9th Cir. 2015). In *Karam*, the Ninth Circuit's analysis of whether pretrial release conditions constituted a seizure revolved around the severity of the conditions imposed. *Karam*, 352 F.3d at 1194. Some possible factors that were mentioned throughout the Ninth Circuit's analysis included: (1) requirements to post bond; (2) requirements to attend court hearings; (3) requirements to contact or report to pretrial services; (4) travel restrictions; (5) burdens on employment

prospects; (6) reputational harm; and (7) the financial and emotional strain of preparing a defense. *Id.* at 1193–94. Ultimately, the Ninth Circuit determined that the plaintiff in *Karam* was not subject to a seizure because "[a]ll she had to do was show up for court appearances and obtain permission from the court if she wanted to leave the state" and, therefore, the "[own-recognizance] release restrictions were de minimus." *Id.* at 1194.

The Court concludes that it need not decide at this point whether Plaintiff's pretrial release conditions amounted to a seizure of his person. "A seizure occurs when an individual submits to a show of lawful authority or an application of physical force by a law enforcement agent." *Aguilera v. Baca*, 510 F.3d 1161, 1167 (9th Cir. 2007). Accordingly, the Supreme Court has noted that a seizure takes place when a person voluntarily surrenders after learning of a warrant or threat of arrest. *Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("[S]urrender to the State's show of authority constituted a seizure for purposes of the Fourth Amendment."). In this case, Plaintiff voluntarily reported to the courthouse for his arraignment where he was "fingerprinted, photographed and processed" by law enforcement before appearing before a judge for arraignment. Dkt. 13 at 13–14. Plaintiff was then released on his own recognizance with undefined "conditions that affected his freedom of movement, residence and association." *Id.* at 14. Although Plaintiff appeared at the courthouse for processing and his arraignment without the application of physical force, there is no dispute that Plaintiff was responding to a show of the state's authority and that he was not free to leave until after he was released on his own recognizance. Accordingly, the Court finds that Plaintiff has adequately alleged that he was seized within the meaning of the Fourth Amendment.

### 2. Procedural Due Process

Defendants also move to dismiss Plaintiff's claims that he was deprived of his rights to procedural due process.

Under the framework of procedural due process, "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001). Plaintiff has described the charges filed against him as "manufactured felony theft charges orchestrated by the individual defendants herein." Dkt. 13 at 16. However, in opposing dismissal, Plaintiff has not pointed to any alleged facts to illustrate how the statements or evidence presented by the individual defendants to the prosecutor were false or fabricated. On the Court's own review, it has been unable to locate any such factual allegations. Absent such allegations, Plaintiff fails to articulate a valid claim that the filing of charges against him violated his right to procedural due process. As will be discussed further below, the Court requests that the parties submit supplemental briefing before the Court decides if this claim should be dismissed.

Additionally, Plaintiff has vaguely argued that he was wrongfully subjected to a constructive discharge. *See* Dkt. 14 at 9. Procedural due process entitles public employees to adequate process before termination from a position in which they possess a "legitimate claim of entitlement." *Baker v. City of SeaTac*, 994 F. Supp. 2d 1148, 1154 (W.D. Wash. 2014). The Ninth Circuit has found that early retirement due to intolerable work conditions can constitute a constructive discharge in violation of due process.

*Knappenberger v. City of Phoenix*, 566 F.3d 936, 940 (9th Cir. 2009). In this case,

Plaintiff's due process claim could be construed as a claim that he was forced to retire a

month early because "various command personnel" expressed displeasure regarding

Plaintiff's off-duty work and he had previously been disciplined in 2013 and 2014. *See*

Dkt. 13 at 10. However, this does not state a viable claim of constructive discharge.

The Ninth Circuit has described constructive discharge as follows:

> [C]onstructive discharge occurs when the working conditions deteriorate
> . . . to the point that they become sufficiently extraordinary and egregious to
> overcome the normal motivation of a competent, diligent, and reasonable
> employee to remain on the job to earn a livelihood and to serve his or her
> employer.

*Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) (quoting *Brooks v. City of San

Mateo*, 229 F.3d 917, 930 (9th Cir. 2000)). The mere expression by command personnel

that they were unhappy with Plaintiff's use of double shifts cannot by itself constitute a

hostile work environment so intolerable to a reasonable employee that it rises to a

constructive discharge. Plaintiff does not allege that any actual disciplinary or adverse

actions were taken against him prior to his retirement other than the incidents that had

occurred around two years earlier in late 2013 and early 2014.[1] Although the subsequent

and purportedly "sham" investigation into allegations of time theft might have constituted

an adverse action that could lead to constructive discharge, the amended complaint makes

---

[1] It should be noted in reference to any discipline arising from the August 2013 and
March 2014 incidents that the present action was not commenced until Plaintiff filed his
complaint in Pierce County Superior Court on March 8, 2018. Plaintiff does not clearly specify
when any disciplinary action against him resulting from these incidents was actually imposed,
although his reference to eight months after the August 2013 incident strongly suggests that the
disciplinary decision was rendered in April 2014.

clear that Plaintiff had already retired before any investigation into time theft was started. Dkt. 13 at 10–11.

Therefore, the Court finds Plaintiff has failed to allege facts describing a hostile work environment or circumstances that arose to constructive discharge before Plaintiff's voluntary retirement. Accordingly, Plaintiff's procedural due process claim predicated on constructive discharge is dismissed. Because it is not absolutely clear that further allegations of circumstances rising to constructive discharge could not be provided in an amended complaint, the dismissal is without prejudice.

### 3. Substantive Due Process

It is well established that the mere institution of legal proceedings is not actionable under 42 U.S.C. § 1983 as a violation of substantive due process. *See Albright*, 510 U.S. at 275. Plaintiff has not identified any fundamental rights of which he claims to have been deprived. Therefore, Plaintiff's 42 U.S.C. § 1983 claims predicated on violations of substantive due process are dismissed. Because it is not entirely clear to the Court that Plaintiff could not identify a fundamental right that was violated by the Defendants' conduct in an amended pleading, dismissal of this claim is without prejudice.

### 4. Equal Protection

Plaintiff claims that he was deprived of equal protection due in part to a supervisor's "personal animosity" towards him. *See* Dkt. 13 at 16. 42 U.S.C. § 1983 generally does not enable equal protection claims against public employers or supervisors based on a "class of one" theory, so any such allegations based on personal animus fail to state a viable equal protection claim. *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985,

996 (9th Cir. 2007), *aff'd sub nom. Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591 (2008). The Plaintiff's only remaining allegations asserted in support of his equal protection claim are based on a theory that he suffered adverse employment actions because of his age. Dkt. 13 at 17. However, the Ninth Circuit has decided that the ADEA "preclud[es] § 1983 actions in the area of age discrimination in employment." *Ahlmeyer v. Nevada Sys. of Higher Educ.*, 555 F.3d 1051, 1060 (9th Cir. 2009). While, this precedent presents a close call and may be suspect, *see Levin v. Madigan*, 692 F.3d 607 (7th Cir. 2012); *Hildebrand v. Allegheny Cty.*, 757 F.3d 99 (3d Cir. 2014), it is nonetheless binding authority on this court.

The Court also notes that Plaintiff vaguely alludes to discriminatory practices used against other employees based on race or disability. But Plaintiff does not make any allegations that he was discriminated against because of his race or a disability. Accordingly, to the extent Plaintiff may seek to argue that Defendants have discriminatory race or disability-based policies, such policies could not have been the moving force behind his own alleged injuries.

Plaintiff's 42 U.S.C. § 1983 equal protection claims fail because they are predicated on allegations of personal animus or age-based employment actions. These fundamental flaws cannot be cured or clarified by asserting additional factual allegations in a second amended complaint. They are therefore dismissed with prejudice.

### 5. Municipal Liability

The City of Tacoma moves to dismiss all of Plaintiff's § 1983 claims against it on the basis that Plaintiff has failed to allege any policy, custom, or practice by the City that

was the moving force behind Plaintiff's alleged injuries. "While local governments may be sued under § 1983, they cannot be held vicariously liable for their employees' constitutional violations." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013). Instead, to state a viable 42 U.S.C. § 1983 claim against a municipality, a plaintiff must allege facts to support a reasonable inference that the execution of a policy, custom, or practice of the municipality was the "moving force" behind a deprivation of his constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978). There are three established scenarios in which a municipality may be liable for constitutional violations under § 1983. "First, a local government may be held liable 'when implementation of its official policies or established customs inflicts the constitutional injury.'" *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2012) (quoting *Monell*, 436 U.S. at 708). Second, Plaintiff can prevail on a § 1983 claim against the City by identifying acts of omission, such as a pervasive failure to train its employees, "when such omissions amount to the local government's own official policy." *Id.* Finally, the City "may be held liable under § 1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Clouthier*, 591 F.3d at 1250 (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992).

Naturally, if there is no underlying constitutional deprivation, a claim asserting municipal liability under § 1983 must necessarily fail. *See Quintanilla v. City of Downey*, 84 F.3d 353, 356 (9th Cir. 1996) (no recovery on § 1983 claim against city absent

showing that plaintiff's arrest violated his constitutional rights). The Court has already

dismissed Plaintiff's individual § 1983 claims for violations of substantive due process,

procedural due process predicated on constructive discharge, and equal protection on the

basis that they fail to allege any constitutional violations actionable under § 1983.

Therefore, the Court need only consider Plaintiff's municipal liability claim in the

context of Plaintiff's § 1983 claims arising from the filing of criminal charges against

him in order to determine if he has alleged a municipal policy, custom, or practice that

was the moving force behind the filing of criminal charges against Plaintiff. However,

Plaintiff's own briefing acknowledges that "the charging of [Plaintiff] is not claimed to

be a 'disciplinary policy' by the defendants as suggested in part in their motion to dismiss

. . . ." Dkt. 14 at 9. Plaintiff's brief then continues to oppose the dismissal of his § 1983

municipal liability claims against the City by arguing exclusively that his "constructive

discharge" was brought about by age-based discrimination from senior administrative

personnel. As explained above, the ADEA precludes § 1983 equal protection claims

based on age-based discrimination by public employers. Accordingly, Plaintiff's § 1983

claims against the City of Tacoma are dismissed. It is not absolutely clear to the Court

that Plaintiff cannot cure his underlying § 1983 claims for substantive due process or

constructive discharge in violation of procedural due process. Nor is it absolutely clear

that if Plaintiff cures these claims, he could not also allege city policies, customs, or

practices that were the moving force behind such violations. Accordingly, the dismissal

of Plaintiff's claims against the City for violations of substantive due process and

procedural due process arising from constructive discharge is without prejudice.

### 6.     Prosecutorial Independence and Supplemental Briefing

Notwithstanding the fact that Plaintiff has adequately alleged a seizure, the Court notes that there is a glaring outstanding issue that raises doubts as to whether Plaintiff has stated a viable § 1983 claim for injuries resulting from the filing of criminal charges. "Ordinarily, the decision to file a criminal complaint is presumed to result from an independent determination on the part of the prosecutor, and thus, precludes liability for those who participated in the investigation or filed a report that resulted in the initiation of proceedings." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004). To overcome the presumption of prosecutorial independence, a plaintiff must allege facts suggesting that the defendants "improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Id.*

Based on the Court's review of the pleadings, there do not appear to exist any allegations indicating that the prosecutor's independence in filing charges was improperly influenced by Defendants. As discussed above, Plaintiff has made conclusory statements referring to the charges filed against him as "manufactured felony theft charges orchestrated by the individual defendants herein." Dkt. 13 at 16. However, the Court is unable to locate any actual factual allegations in the complaint suggesting that the materials presented to the prosecutor included false information, omitted any material information, or that Defendants otherwise "engaged in wrongful or bad faith conduct that

was actively instrumental in causing the initiation of legal proceedings." *Beck v. City of Upland*, 527 F.3d 853, 862–63 (9th Cir. 2008) (quotation omitted).

The parties have not addressed this issue in their briefs, and the Court will not dismiss Plaintiff's Fourth Amendment claim sua sponte on this basis without affording the parties an opportunity to address the issue. Also, as discussed above, whether the Defendants fabricated evidence or otherwise improperly caused false charges to be filed will be determinative of Plaintiff's outstanding procedural due process claim. Accordingly, the Court requests supplemental briefing on the question of whether the complaint includes allegations that overcome the presumption of prosecutorial independence.

## C. Tortious Interference Claim

Finally, Defendants move to dismiss Plaintiff's claim for tortious interference. A claim of tortious interference with a business expectancy requires that Plaintiff prove the following five elements:

> (1) the existence of a valid contractual relationship or business expectancy;
> (2) that defendants had knowledge of that relationship; (3) an intentional
> interference inducing or causing a breach or termination of the relationship
> or expectancy; (4) that defendants interfered for an improper purpose or
> used improper means; and (5) resultant damage.

*Moore v. Commercial Aircraft Interiors*, LLC, 168 Wn. App. 502, 508–09 (2012).
Defendants argue that Plaintiff has failed to state a viable claim of tortious interference because he failed to allege that his employment was not at-will and "[g]enerally, at-will employees do not have a business expectancy in continued employment." *Woody v. Stapp*, 146 Wn. App. 16, 24 (2008). However, the amended complaint does in fact

include allegations that Plaintiff was terminated from a position with union protections that modified his employer's rights to termination. Defendants are correct that "union" is not a magic word that somehow creates a business expectancy. However, where Plaintiff has alleged that his union position was subject to union protections, this allegation (although vague) indicates that the genuineness of a factual dispute over a valid contractual relationship or business expectancy is an issue better reserved for review in summary judgment proceedings. Accordingly, Defendants' motion to dismiss Plaintiff's tortious interference claim is denied.

## IV.  ORDER

Therefore, it is hereby **ORDERED** that Defendants' motion to dismiss (Dkt. 8) is **GRANTED in part**, **DENIED in part, and DEFERRED in part** as follows:

1. Plaintiff's § 1983 equal protection claims are **DISMISSED with prejudice**;

2. Plaintiff's § 1983 substantive due process claims are **DISMISSED without prejudice**;

3. Plaintiff's § 1983 procedural due process claim predicated on a theory of constructive discharge is **DISMISSED without prejudice**.

4. Defendants' request to dismiss Plaintiff's tortious interference claim is **DENIED**; and

5. Pending **SUPPLEMENTAL BRIEFING** on issues outlined in the discussion above, the Court **DEFERS RULING** on Plaintiff's § 1983 procedural due

process and unreasonable seizure claims to the extent they are predicated on injuries arising from the filing of criminal charges against him.

The parties may submit supplemental briefs on Plaintiff's procedural due process and unreasonable seizure claims, not to exceed fifteen pages, to be filed no later than June 29, 2018. The parties may also submit supplemental responses, not to exceed five pages, to be filed no later than July 6, 2018.

Plaintiff has not requested leave to file a second amended complaint should the Court find that any of his claims fail, which the Court has so found. Nonetheless, the Court has dismissed certain claims without prejudice. If Plaintiff believes any of the claims dismissed without prejudice in this order can be cured by amendment, he should promptly move for leave to file a second amended complaint in accordance with the Court's local rules or face dismissal with prejudice. *See* Fed. R. Civ. P. 15(a)(2); Local Rules W.D. Wash. LCR 15. Plaintiff may move for leave to amend the claims dismissed by this order no later than July 20, 2018. If Plaintiff does not file a motion for leave to amend by that date, the claims dismissed in this order shall be deemed dismissed with prejudice without any further order from the Court.

The Clerk shall **RENOTE** Defendants' motion to dismiss (Dkt. 8) for further consideration on July 6, 2018.

Dated this 14th day of June, 2018.

BENJAMIN H. SETTLE
United States District Judge