# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| ROBERT H. LUKE,<br><br>            Plaintiff,<br><br>v.<br><br>CITY OF TACOMA, et al.,<br><br>           Defendants. | CASE NO. C18-5245 BHS<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND AND DENYING DEFENDANTS' MOTION TO DISMISS AS MOOT |

    This matter comes before the Court on the motion to dismiss of Defendants Sean Gustason, Frank Krause, Mike Ake, Donald Ramsdell, the Tacoma Police Department, and the City of Tacoma (collectively "Defendants"). Dkt. 8. Also before the Court is Plaintiff Robert H. Luke's ("Plaintiff") motion to file a second amended complaint. Dkt. 21. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby (1) grants Plaintiff's motion for leave to amend and (2) denies as moot the outstanding requests in Defendants' motion to dismiss.

## I. PROCEDURAL HISTORY

    On March 8, 2018, Plaintiff filed his original complaint in this action in Pierce County Superior Court. Dkt. 1-2. On March 28, 2018, Defendants removed the case to federal court. Dkt 1.

On April 4, 2018, Defendants moved for partial dismissal of Plaintiff's claims. Dkt. 8. On April 23, 2018, Plaintiff filed an amended complaint as a matter of course and responded to Defendants' motion to dismiss. Dkts. 13, 14. On April 27, 2018, Defendants replied. Dkt. 15.

On June 14, 2018, the Court entered an order granting the motion to dismiss in part, denying it in part, deferring ruling in part, and requesting supplemental briefing. Dkt. 17. On June 29, the parties filed the requested supplemental briefing. Dkts. 19, 20. Also on June 29, 2018, Plaintiff moved for leave to file a second amended complaint. Dkt. 21.

On July 5, 2018, Plaintiff filed responsive supplemental briefing. Dkt. 25. On July 6, 2018, Defendants filed responsive supplemental briefing. Dkt. 26.

On July 16, 2018, Defendants responded to Plaintiff's motion for leave to amend. On July 20, 2018, Plaintiff replied. Dkt. 28.

## II. FACTUAL BACKGROUND

Plaintiff worked as a patrolman with the Tacoma Police Department from November 1995 until October 2015, when he retired at the age of fifty-five. Dkt. 22-1 at 4. During his time as a police officer, Plaintiff occasionally accepted qualified "off-duty work" assignments that were assigned to him through his command officer, Defendant Krause. *Id.* at 5. Plaintiff also made direct arrangements with businesses and private persons for qualified "off-duty work." *Id.* at 4–5. Plaintiff alleges that both methods of obtaining off-duty work were approved by the Tacoma Police Department. *Id.* at 5. As part of Plaintiff's employment with the Tacoma Police Department, Plaintiff was issued a

police vehicle that he was permitted to use for on-duty and off-duty Tacoma Police Department work. *Id.* at 6.

In 2009, Defendant Gustason, a captain, informed Plaintiff that Gustason had been tasked with "getting rid of" Plaintiff and his long-time partner. *Id.* at 4–5.

In 2010, Plaintiff began a part-time relief security officer position with the Port of Tacoma. *Id.* at 6. The position was not a qualified "off-duty work" position, but rather an entirely separate job. *Id.*

In 2012, Defendant Krause expressed to Plaintiff and others in the department that he resented Plaintiff making arrangements for off-duty work directly with the public rather than through himself as Plaintiff's command officer. *Id.* at 5.

In August 2013, Plaintiff was performing qualified off-duty work at a motel which ended at approximately 2:00 am. *Id.* at 7. After driving home, Plaintiff received a call from the Port of Tacoma requesting immediate assistance in the capacity of his second job as a Port of Tacoma relief officer due to a protest. *Id.* Plaintiff only had his unmarked Tacoma Police Department vehicle available to him when he received the call, so he used that vehicle to respond to his non-Tacoma Police Department position. *Id.* After arriving at the scene, Plaintiff found that Defendant Krause was also at the Port because both Tacoma Police Department officers and Port employees were responding to the protest. *Id.* Defendant Krause observed that Plaintiff was using his assigned Tacoma Police Department vehicle. *Id.* Krause confirmed that it was a Tacoma Police Department vehicle and then ordered Plaintiff to explain why it was being used to travel to his separate employment at the Port. *Id.* at 7–8. Before Plaintiff could explain, Defendant

Krause abruptly drove off. *Id.* at 8. Defendant Krause later filed a complaint against Plaintiff with internal affairs. *Id.* Internal affairs brought disciplinary charges for untruthfulness, insubordination, behavior unbecoming an officer, and improper use of a department vehicle. *Id.* After a hearing eight months later, a violation finding was rendered. Plaintiff grieved that result and hearing on his grievance is still pending. *Id.*

In March 2014, Plaintiff's son received a traffic ticket in the city of Lakewood. *Id.* Plaintiff received permission from his lieutenant to travel to the city of Lakewood while on duty to pay the ticket. *Id.* Subsequently, the Lakewood Police Department filed a complaint with the Tacoma Police Department. *Id.* at 9. Purportedly, the complaint falsely claimed that Plaintiff made statements while paying his son's ticket suggesting that he would retaliate against Lakewood police officers in his jurisdiction. *Id.* Despite having received permission from his lieutenant to go and pay the ticket while on duty, Defendant Ake initiated a disciplinary citation against Plaintiff for conduct unbecoming an officer and leaving his duty post. *Id.* Although Plaintiff's lieutenant informed Defendant Ake that the complaint against Plaintiff "was without substantive merit," Defendant Ake nonetheless referred the matter to internal affairs. *Id.* While it is unclear from Plaintiff's complaint if this discipline is subject to a separate grievance or the grievance already mentioned above, grievance proceedings for this discipline are still pending. *Id.*

At some unspecified time in the autumn of 2015, Plaintiff was hired for a full-time position by the Port of Tacoma. *Id.* The position included unspecified union protections, but could not be held by someone who was charged or had been convicted of a felony. *Id.*

at 9–10. On September 1, 2015, Plaintiff began to work a graveyard shift at the Port before starting his day shift at the Tacoma Police Department. *Id.* at 10. His shift with the Port ended at 6:53 am and his shift with the Tacoma Police Department began at 7:00 am. Plaintiff's direct supervisor at the Tacoma Police Department informed him that his Port of Tacoma position was permissible so long as it did not interfere with his Tacoma Police Department work. Plaintiff's supervisor also stated that Plaintiff could adjust his shift to accommodate "necessary deviations from any rigid preliminary schedule." *Id.*

Plaintiff alleges that deviation from the preliminary posted schedule was the policy and practice of officers in his position with the Tacoma Police Department. *Id.* Plaintiff explains that the Department utilizes a "Telestaff staffing grid" that is a projection of future coverage and allows for numerous adjustments by officers in every pay period. *Id.* at 13. Plaintiff further alleges that the system did not require command authority for any supervisor to deny reasonable schedule adjustments on either a prior or post conduct basis. *Id.* Plaintiff made adjustments to his Tacoma Police Department shift to accommodate his schedule at the Port of Tacoma, which was not flexible. *See id.* at 9–11. Each shift adjustment that Plaintiff made was authorized by an immediate supervisor. *Id.* at 14.

Also at an unspecified date in autumn of 2015, Plaintiff informed his direct supervisor that he was considering retiring in November 2015 "in order to round-out his full 32nd year of police work." *Id.* at 11. Soon after that, "various command personnel" announced that they were unhappy with Plaintiff working double shifts. "[A]s a consequence of these statements and remarks, [Plaintiff] immediately gave his notice of

retirement on October 1, 2015. *Id.* After his retirement from the Tacoma Police Department, Plaintiff continued to work in his position for the Port of Tacoma. *Id.*

After Plaintiff retired, Tacoma Police Department command personnel assigned Detective Sergeant Schieferdecker to investigate whether Plaintiff had been stealing time from the Tacoma Police Department by claiming to be on duty when he was in fact still working at the Port. *Id.* Detective Schieferdecker was assigned to the investigation even though she allegedly had made previous false allegations against Plaintiff for which she was verbally reprimanded. *Id.* at 12. Before the investigation began, Defendant Ake contacted Plaintiff's supervisor at the Port of Tacoma. *Id.* Defendant Ake informed the Port supervisor that there was a state regulation prohibiting Plaintiff from working for the Tacoma Police Department and the Port of Tacoma at the same time, that it had been against Tacoma Police Department Policy, and that there was an investigation being started to determine if Plaintiff had committed a felony. *Id.* Detective Schieferdecker went to the Port during her investigation and obtained Plaintiff's timecard records. *Id.* She also informed the supervisors at the Port that she was investigating Plaintiff for a crime and that felony charges would be forthcoming. *Id.* at 12.

Plaintiff alleges that the investigation and previous statements of displeasure with Plaintiff's off-duty work were done discriminatorily on the basis of Plaintiff's age. *Id.* at 19. Plaintiff alleges that Defendant Krause "manufactured discipline" against Plaintiff based in part on Plaintiff's age and Krause's personal animosity towards Plaintiff. *Id.* Plaintiff also alleges that the discipline he was subjected to was motivated by his age and constituted a hostile work environment. Plaintiff further complains that Defendant Ake

"made false statements to third persons and entity representatives not employed by the City of Tacoma . . . which would place [Plaintiff] in a false light." *Id.* at 20.

In forwarding the investigative file to the prosecutor, Defendants allegedly submitted spreadsheets purporting to show "that the conclusion of 'stolen time' was incontrovertible and subject to mathematically precise calculation." *Id.* at 15. Plaintiff further alleges that Defendants forwarded this evidence while knowingly omitting exculpatory evidence in the form of time cards showing authorized shift adjustments as well as department policies that indicated that Plaintiff had not stolen any time. *Id.*

"On the basis of Detective Shieferdecker's investigative report and at the direction of the individual defendants herein, [P]laintiff . . . was charged with theft in the second degree under RCW 9A.56.040." *Id.* at 16. Plaintiff alleges that other Tacoma Police Department officers who had been investigated and had been proven to have "stolen time" were not charged with a crime. *Id.* at 16–17. He claims that there exists a "de facto policy of use of disciplinary procedure for punitive and political purposes, at times personal vendettas, against disfavored officers . . . having everything to do by certain officers' relationship with certain command personnel." *Id.* at 21.

Plaintiff voluntarily presented himself at the courthouse where he was "fingerprinted, photographed and processed" by law enforcement before presenting to a judge for arraignment. *Id.* at 16. Plaintiff was then released on his own recognizance with undefined "conditions that affected his freedom of movement, residence and association." *Id.* Plaintiff does not indicate whether he was required to post bond or was subject to reporting requirements other than the responsibility to appear at hearings.

In addition to public humiliation and loss of reputation, Plaintiff lost his employment at the Port because of the felony charges that were pending against him. *Id.* at 12, 16. Plaintiff also lost a subsequent job he was initially hired for at Fred Meyer because of the pending felony charges. *Id.* at 17. Additionally, Plaintiff incurred the cost of hiring a criminal defense attorney. *Id.* at 16.

On October 18, 2016, the Pierce County Prosecuting Attorney's Office voluntarily dismissed the charges against Plaintiff without prejudice. *Id.* at 17; Dkt. 13 at 30–32. After the dismissal of charges, Plaintiff was rehired by the Port of Tacoma where he presently continues to work. Dkt. 22-1 at 18.

### III. DISCUSSION

Presently before the Court are Plaintiff's motion for leave to file a second amended complaint and Defendants' motion to dismiss the first amended complaint. Dkts. 8, 21. Defendants moved for partial dismissal of Plaintiff's claims pursuant prior to Plaintiff's motion for leave to amend. Dkt. 8. Defendant's motion was granted in part, denied in part, and the Court requested supplemental briefing and reserved ruling in part. *See* Dkt. 17. Remaining unresolved in that motion were Plaintiff's procedural due process and unreasonable seizure claims under 42 U.S.C. § 1983. However, based on the Court's previous order, Plaintiff has moved for leave to file a second amended complaint, which would supplant the allegations in the amended complaint upon which Defendants' motion to dismiss is granted. Defendants appear to recognize that such allegations state a viable claim for procedural due process, and appear to implicitly recognize that the proposed amended pleadings render moot their pending motion on Plaintiff's procedural due

process claim. Indeed, the Court notes that by supplanting the first amended complaint, Plaintiff's proposed pleadings would render moot any outstanding issue raised by the motion to dismiss. Accordingly, to the extent that Plaintiff's motion to dismiss has not yet been resolved, it is otherwise denied as moot.

Nonetheless, Defendants partially oppose Plaintiff's motion for leave to amend on the basis that several claims asserted therein are futile. Leave to amend a pleading may be allowed by leave of the court and "shall freely be given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962); Fed. R. Civ. P. 15(a). In determining whether amendment is appropriate, the Court considers five potential factors: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether there has been previous amendment. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). The Court's decision is guided by the established practice of permitting amendments with "extreme liberality" in order to further the policy of reaching merits-based decisions. *DCD Programs Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). In light of this policy, the nonmoving party generally bears the burden of showing why leave to amend should be denied. *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 530-31 (N.D. Cal. 1989). Amendment is futile "only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). Specifically, Defendants argue that Plaintiff's amended substantive due process claims against all the defendants and his 42 U.S.C. § 1983 claims against the City fail to state a claim upon which relief can be granted.

### A. Due Process and Malicious Prosecution

Defendants argue that Plaintiff's amended substantive due substantive due process claims fail for the same reason that the Court dismissed them in its previous order. Plaintiff does not directly address Defendants' arguments, but instead responds that "[t]o the extent that the Court's Order of June 14, 2018 limits the application of substantive due process to the constructive discharge issue, Plaintiff does not oppose a dismissal of the substantive due process claim on the basis of constructive discharge." Dkt. 28 at 2. Accordingly, pursuant to Plaintiff's stipulation, Plaintiff's claims of a substantive due process violation are dismissed to the extent they are predicated on a theory of constructive discharge. However, the Court's dismissal of Plaintiff's substantive due process claims asserted in his previous pleadings was not limited to a theory of constructive discharge. Instead, the Court stated:

> It is well established that the mere institution of legal proceedings is not actionable under 42 U.S.C. § 1983 as a violation of substantive due process. *See Albright v. Oliver*, 510 U.S. 266, 275 (1994). Plaintiff has not identified any fundamental rights of which he claims to have been deprived. Therefore, Plaintiff's 42 U.S.C. § 1983 claims predicated on violations of substantive due process are dismissed.

Dkt. 17 at 16.

Nonetheless, the Court finds that Plaintiff's substantive due process claim is not futile under the allegations in proposed second amended complaint. In the Court's previous order, it distinguished between Plaintiff's procedural and substantive due process claims and noted that procedural due process provided a clear right not to be subjected to criminal charges on the basis of deliberately fabricated evidence. *See*

*Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001). However, subsequent review reveals that such malicious prosecution claims do indeed fall within the ambit of substantive due process. *See Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010) (discussing the § 1983 malicious prosecution with fabricated evidence theory in the context of substantive due process).

While addressing the matter in the context of procedural due process, the Court previously noted that Plaintiff's due process malicious prosecution claim seemed to lack sufficient factual allegations to indicate that any defendant had presented false or fabricated evidence to overcome the presumption of prosecutorial independence. "Ordinarily, the decision to file a criminal complaint is presumed to result from an independent determination on the part of the prosecutor, and thus, precludes liability for those who participated in the investigation or filed a report that resulted in the initiation of proceedings." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004). To overcome the presumption of prosecutorial independence, a plaintiff must allege facts suggesting that the defendants "improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Id.*

In his motion for leave to amend, Plaintiff has proposed a substantial addition of the factual allegations underlying his due process claim. The proposed second amended complaint includes allegations that the individually-named defendants knowingly approved and submitted incomplete investigative materials to the prosecutor for

consideration. Specifically, Plaintiff alleges that the Defendants approved and submitted to the prosecutor an investigative report with spreadsheets purporting to show with mathematical certainty that Plaintiff had stolen time from the City. Plaintiff further alleges that Defendants did so while knowingly omitting exculpatory evidence in their possession, specifically Plaintiff's time cards with authorized shift adjustments and City policies, that showed with certainty that Plaintiff actually did not steal any time. Dkt. 22-1 at 14–16. The Court finds that such allegations of knowing omissions of exculpatory evidence overcome the presumption of prosecutorial independence and state a valid claim of a due process violation. *See Harper v. City of Los Angeles*, 533 F.3d 1010, 1028 (9th Cir. 2008) ("The presumption of prosecutorial independence protects investigative officers unless the evidence shows that the officers interfered with the prosecutor's judgment *by omitting relevant information* or by pressuring the prosecutor to file charges.") (emphasis added).

Presenting evidence to support a genuine dispute over whether these omissions were intentional may prove difficult for Plaintiff in future summary judgment proceedings, but for the purposes of a motion to dismiss and a motion for leave to amend, the Court accepts the allegations presented in the complaint as true. As Plaintiff's proposed amendments allege a deliberate omission of exculpatory evidence when forwarding to the prosecutor an investigative report that led to the filing of felony charges and Plaintiff's subsequent seizure, the Court finds that the proposed second amended complaint adequately states a procedural due process violation and the proposed amendment is not futile.

Similarly, in the previously filed order, the Court found that Plaintiff had supported a 42 U.S.C § 1983 false arrest claim with adequate allegations of a seizure, but appeared to lack adequate allegations to overcome the presumption of prosecutorial independence. The Court requested supplemental briefing on the viability of an unlawful seizure claim. However, upon closer review of the first amended and proposed second amended complaints, it is clear that Plaintiff does not assert any independent unlawful seizure claim. Instead, Plaintiff has alleged that Defendants' conduct violated the Fourth Amendment in the context of his due process claim. *See* Dkt. 22-1 at 21–22. This properly supports Plaintiff's claim of a due process violation under a theory of malicious prosecution. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561–62 (9th Cir. 1987) ("[T]he general rule is that a claim of malicious prosecution is not cognizable under 42 U.S.C. § 1983 if process is available within the state judicial system to provide a remedy. However, an exception exists to the general rule when a malicious prosecution is . . . intended to subject a person to a denial of constitutional rights."). To the extent that Plaintiff's due process claim for malicious prosecution and his unlawful seizure allegations are related, the Court has previously noted that Plaintiff has adequately alleged a seizure under the Fourth Amendment. The Court need not address this issue further other than to note that Plaintiff's allegations of a seizure support his due process claim for malicious prosecution, indicating that such a claim as presented in the proposed second amended complaint is not futile.

## B. Due Process and Constructive Discharge

Defendants also oppose Plaintiff's proposed amendment on the basis that it fails to cure any due process claim that might be predicated on a theory of constructive discharge. Dkt. 27 at 11–12. In reply, Plaintiff states that he "has not alleged and is not going to allege a claim of constructive discharge to support a claim of violation of his procedural due process rights." Dkt. 28 at 1. Accordingly, pursuant to Plaintiff's stipulation, "[t]o the extent his Amended Complaint and Second Amended Complaint is construed to suggest such a claim," *id.*, the claim is dismissed.

## C. Municipal Liability

The City of Tacoma also opposes Plaintiff's amended 42 U.S.C. § 1983 claims against it on the basis that Plaintiff has failed to allege any policy, custom, or practice by the City that was the moving force behind Plaintiff's alleged injuries. The only § 1983 allegation asserted in Plaintiff's proposed second amended complaint is Plaintiff's due process claim for malicious prosecution. *See* Dkt. 22-1 at 21–25. Therefore, the Court must consider if Plaintiff has alleged a municipal policy, custom, or practice that was the moving force behind the filing of criminal charges against him.

"While local governments may be sued under § 1983, they cannot be held vicariously liable for their employees' constitutional violations." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013). Instead, to state a viable 42 U.S.C. § 1983 claim against a municipality, a plaintiff must allege facts to support a reasonable inference that the execution of a policy, custom, or practice of the municipality was the "moving force" behind a deprivation of his constitutional rights. *Monell v. Dep't of Soc.*

*Servs.*, 436 U.S. 658, 691–92 (1978). There are three established scenarios in which a municipality may be liable for constitutional violations under § 1983. "First, a local government may be held liable 'when implementation of its official policies or established customs inflicts the constitutional injury.'" *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2012) (quoting *Monell*, 436 U.S. at 708). Second, Plaintiff can prevail on a § 1983 claim against the City by identifying acts of omission, such as a pervasive failure to train its employees, "when such omissions amount to the local government's own official policy." *Id*. Finally, the City "may be held liable under § 1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Clouthier*, 591 F.3d at 1250 (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992).

Plaintiff's § 1983 claims against the City are predicated on a theory of ratification. Specifically, Plaintiff alleges that Defendants Chief Ramsdell and Assistant Chief Ake were officials with "final policy-making authority" and that they ratified the decision to knowingly omit exculpatory evidence from the investigative file forwarded to the prosecutor. Dkt. 22-1 at 21.[1] Plaintiff has further alleged that the investigation was directed and approved by these defendants. Dkt. 22-1 at 14. The Court finds that these allegations adequately state a claim for municipal liability under § 1983 based on a theory

---

[1] Plaintiff has also claimed that these defendants ratified unconstitutional protections that violate the equal protection clause. However, the Court dismissed Plaintiff's equal protection claim with prejudice in its previous order. To the extent Plaintiff's equal protection claims are reasserted in the proposed second amended complaint, they have already been dismissed.

of ratification. Although Defendants place much emphasis on this Court's decision in *German v. Roberts*, CV 15-5237 BHS-DWC, 2017 WL 6547472 (W.D. Wash. Dec. 22, 2017), that order was entered on review of a motion for summary judgment and involved a careful review of investigative proceedings to determine whether policy-making officials had ratified both an officer's conduct and the allegedly unconstitutional basis for it. Such detailed review is not possible when reviewing a complaint on a motion to dismiss or when examining proposed amended pleadings for futility. It is sufficient for the purposes of pleading a claim that Plaintiff has alleged that policy-making officials personally directed the investigation against him and approved the decision to omit exculpatory evidence when forwarding the investigative file to the prosecutor.

Based on the foregoing, Plaintiff's proposed amendments to his § 1983 claim against the City are not futile and his motion for leave to amend should be granted.

## IV. ORDER

Therefore, it is hereby **ORDERED** that the Defendants' outstanding requests in their motion to dismiss (Dkt. 8) are **DENIED as moot**. Plaintiff's motion for leave to file a second amended complaint (Dkt. 22) is **GRANTED**. To the extent Plaintiff's proposed second amended complaint asserts equal protection claims, those claims are **DISMISSED** for the same reasons set forth in the Court's previous order. To the extent Plaintiff's proposed second amended complaint may be construed to assert a due process

claim for constructive discharge, that claim is **DISMISSED** pursuant to Plaintiff's stipulation.

Dated this 20th day of August, 2018.

BENJAMIN H. SETTLE
United States District Judge